**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Gerald M. SCHAFLANDER,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Stephen M. WRIGHT,
Defendant-Appellant.**

**Nos. 82–1381 to 82–1384.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 8, 1983.

Decided Nov. 3, 1983.

Before SCHROEDER and CANBY, Circuit Judges, and HOFFMAN,* District Judge.

SCHROEDER, Circuit Judge.

█ Appellants Schaflander and Wright were each convicted of ten counts of mail fraud in violation of 18 U.S.C. § 1341. They carried out an elaborate scheme to entice investors to loan money for the mass production of solar cells. Appellants in fact could not produce the cells at a competitive cost. During the course of the eight-week trial, the government produced more than sufficient evidence from which the jury could conclude that both defendants made numerous misrepresentations about their ability to produce the cells, and that they used mailings (primarily loan agreements and promissory notes) as part of the scheme in order to lull investors into a false sense of security. *See United States v. Sampson,* 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962). Appellants' challenge to the sufficiency of the evidence is without merit.

Apart from the sufficiency of the evidence claim, appellants raise four points which they assert require reversal: (1) the court's fifth amendment admonition to Schaflander and interruptions during his testimony violated his right to a fair trial; (2) prosecutorial misconduct violated the rights of both defendants to a fair trial; (3) the court abused its discretion in admitting testimony concerning uncharged crimes; and (4) the jury received erroneous instructions on the intent required for mail fraud.

█ Only the fifth amendment issue merits any extensive discussion. Defendants contend that the district court committed reversible error when, in the presence of the jury, it engaged in a lengthly colloquy with Schaflander designed to assure the court that he understood the possible consequences of his testifying in the case.[1] They correctly ar-

Frederik A. Jacobsen, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Vana Parker Margolese, Los Angeles, Cal., for defendants-appellants.

---

* Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

1. THE COURT: Dr. Schaflander, before you begin I want to advise you that you do have a right under the Fifth Amendment to remain silent and to have the government prove its case against you, and they must do so beyond a reasonable doubt, without your uttering a word, putting on any defense. You realize that, do you not?

gue that such an interrogation, in some circumstances, could lead the jury to conclude that the court believed that the witness might indeed perjure himself or, if testifying truthfully, admit to having committed crimes. If such questioning is to be done to satisfy the court of the defendant's understanding of his rights, it should be done outside the presence of the jury. The Third Circuit has discussed all the considerations involved in this type of practice in its opinion in *United States v. Agee,* 597 F.2d 350, 361–63 (3d Cir.) (en banc), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979). *See also Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972), where the trial judge's warnings caused the witness to decide not to testify and prejudiced the defense's presentation of its case.

■ The district court's questioning here would require reversal if "the conduct measured by the facts of the case presented together with the result of the trial, was clearly prejudicial to the rights of the party." *United States v. Bennett,* 702 F.2d 833, 836 (9th Cir.1983), *quoting United States v. Eldred,* 588 F.2d 746, 750 (9th Cir.1978). We conclude it was not. The court handled the lengthy and often colorful trial in a remarkably even-handed manner. The fifth amendment admonition is the only instance of judicial conduct that could have been interpreted as conveying an adverse opinion about defense witnesses. The evidence of guilt was strong. *See Bennett, supra, citing United States v. Poland,* 659 F.2d 884, 894 (9th Cir.), *cert. denied,* 454 U.S. 1059, 102 S.Ct. 611, 70 L.Ed.2d 598 (1981). The admonition did not discourage Schaflander from testifying. The trial

court's subsequent interruptions were warranted by the defendant's unresponsive testimony. In interrupting, the court was acting reasonably under the circumstances. Neither the admonition nor the interruptions constitute judicial misconduct that warrants reversal.

■ Appellants' principal claim of prosecutorial misconduct relates to a tape recording admitted into evidence. Appellants contend that during the trial the prosecutor should have disclosed that its expert no longer could vouch for the fact that the recording was the original rather than a copy and, further, that the expert could not rule out the possibility of tampering. Although it is misconduct for a prosecutor to fail to disclose evidence favorable to an accused who has requested it, *see Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), lack of disclosure is not troubling here. Defense counsel knew, at the same time as the government, of the possibility of a problem with the tape. There was no prosecutorial misconduct.

In the alternative, appellants argue that the district court abused its discretion in denying their motion for a new trial which, through newly retained defense counsel, presented the matter of the tape for the first time to the court. There had been no government expert testimony about the authenticity of the tape, and the defense chose not to call any experts to question authenticity, although it had the opportunity to do so during the trial. The government witness who said he had made the tape testified and was cross-examined, and Schaflan-

THE WITNESS: I understand that fully, your Honor.
THE COURT: You have talked this matter over with your lawyer, have you?
THE WITNESS: Absolutely.
THE COURT: And you understand that by taking the stand and testifying that you are giving up your Fifth Amendment right to remain silent?
THE WITNESS: Yes, I do. I certainly do, your Honor.
THE COURT: You understand, further, that you could incriminate yourself through answers that you give to the United States

Attorney's questions of you on cross-examination as well as questions on examination by Mr. Heaney [attorney for co-defendant Wright] or, indeed, by your own lawyer. Do you understand that?
THE WITNESS: Yes, I do, your Honor.
THE COURT: And, understanding that, is it still your desire to testify here?
THE WITNESS: It most assuredly is, your Honor.
THE COURT: And you understand you are under oath?
THE WITNESS: I certainly do, your Honor.
THE COURT: Very well. Let's proceed.

der in his direct testimony stated that he believed the tape was inaccurate.

 The "newly discovered evidence" presented in the motion for a new trial therefore showed at most that a problem with the tape "could" have existed. To warrant a new trial on the basis of newly discovered evidence, however, the evidence must be more than merely cumulative or impeaching; it must be of a sort that, in a new trial, probably would produce an acquittal. *See United States v. Kenny,* 645 F.2d 1323, 1343 (9th Cir.), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981). We agree with the district court that any challenge to the tape here would go only to impeachment of the witness who testified as to the matters contained on it. The jury's verdict could not, within the realm of predictable probability, have been affected even if defense counsel had chosen during the trial to present the matters contained in the post-trial motion. No error occurred, and there is no need for a new trial.

The remaining allegations of prosecutorial misconduct are without merit. Appellants contend that the district court erred in admitting testimony by a United States Senator that a letter purportedly giving his support to defendants' efforts was a forgery. Since Schaflander himself presented the forged letter to the grand jury as exculpatory evidence, both the letter and the testimony were admissible for purposes of showing that defendant had made a false exculpatory statement. *See Wilson v. United States,* 162 U.S. 613, 620, 16 S.Ct. 895, 898–99, 40 L.Ed. 1090 (1896); *United States v. Rajewski,* 526 F.2d 149 (7th Cir.1975), *cert. denied,* 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976); *Fox v. United States,* 381 F.2d 125, 129 (9th Cir. 1967).

Finally, appellants contend that the district court's instructions on intent allowed the jury to convict them on a negligence theory. They point to the statement in one instruction that "reckless disregard" is enough to render a statement false or fraudulent. The instruction correctly stated the law in this Circuit that reckless disregard for truth or falsity is sufficient to sustain a mail fraud conviction. *United States v. Farris,* 614 F.2d 634, 638 (9th Cir.1979), *cert. denied,* 447 U.S. 926, 100 S.Ct. 3022, 65 L.Ed.2d 1120 (1980); *see also United States v. Cusino,* 694 F.2d 185 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2096, 77 L.Ed.2d 305 (1983) (reckless indifference to truth or falsity of representation establishes fraudulent intent). *Compare United States v. Hanlon,* 548 F.2d 1096, 1101 (2d Cir.1977) (disapproving "reckless disregard" language without reversing the conviction).

Affirmed.