793 F.2d 1291
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
STEVEN CRAIG, a/k/a STANLEY CARLTON, Petitioner-Appellant,
vs.
TED ENGLE; THE ATTORNEY GENERAL OF THE STATE OF
OHIO,Respondents-Appellants.
 85-3548
 United States Court of Appeals, Sixth Circuit.
 5/2/86
 
 AFFIRMED
 N.D.Ohio, 613 F.Supp. 782
 On Appeal from the United States District Court for the Northern District of Ohio
 BEFORE: MARTIN and GUY, Circuit Judges, and REED, District Judge.*
 PER CURIAM.
 
 
 1
 Petitioner Craig appeals from the denial of a petition for a writ of habeas corpus. Craig's petition for habeas relief is predicated upon a claim that his trial and conviction on robbery charges in Cuyahoga County, Ohio, in 1978 should have been barred by the principle of either double jeopardy or collateral estoppel since he had been acquitted on similar charges earlier in 1978 in Lake County, Ohio. Since we find, as did the district court, that petitioner's second trial was not barred by the principles of double jeopardy or collateral estoppel, we affirm.[1]
 
 I.
 
 2
 On June 2, 1978, Craig and a female companion attempted to steal ten cartons of cigarettes from a Pick-N-Pay store in Cleveland Heights, Ohio. Discovered in the act they fled and were chased by the store manager and two stock boys. Craig and his companion ran to a nearby gasoline station where Craig commandeered a 1970 blue Plymouth Valiant by pushing its driver, Lorrie Goldstein, out of the car and driving away with his accomplice. Craig eluded chase by both the gas station owner and Cleveland Heights police officers.
 
 
 3
 Approximately six weeks later, on July 20, 1978, Craig and an accomplice were caught stealing dresses in a Lake County, Ohio, department store. The stolen Plymouth was found in the parking lot. Shortly thereafter, on September 13, 1978, Craig was indicted by the Lake County Grand Jury and charged with one count of grand theft, in violation of Ohio Rev. Code Sec. 2913.01(A)(1)(3), and two counts of receiving stolen property, in violation of Ohio Rev. Code Sec. 2913.51. One of the two counts charging receipt of stolen property related to the Plymouth automobile. Craig plead not guilty and was tried by a jury. The jury found Craig guilty of the grand theft charge, but acquitted him on the two counts of receiving stolen property, which included the count involving the Plymouth automobile.[2]
 
 
 4
 On September 20, 1985, Craig was also indicted by the Cuyahoga County, Ohio, grand jury.[3] The indictment was seven days subsequent to the Lake County indictment but prior to the Lake County trial. The Cuyahoga County indictment charged Craig with one count of aggravated robbery, pursuant to Ohio Rev. Code Sec. 2911.01, and one count of robbery, pursuant to Ohio Rev. Code Sec. 2911.02. After pleading not guilty, Craig was found guilty by a jury on February 20, 1979.[4]
 
 II.
 
 5
 Craig's argument, simply stated, is that having been acquitted in Lake County of receiving stolen property (the Plymouth), he could not later be tried for the theft of the Plymouth. Craig contends that principles of double jeopardy or collateral estoppel should have barred his Cuyahoga County trial.
 
 
 6
 When considering double jeopardy issues of this nature, the starting point is Blockburger v. United States, 284 U.S. 299 (1932). Blockburger instructs that '[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' 284 U.S. at 304. This test emphasizes the elements of the two crimes. 'If each requires proof of a fact that the other does not, the Blockburger test is not satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.' Iannelli v. United States, 420 U.S. 770, 785 n.17 (1975).
 
 
 7
 Before the Blockburger test can be applied to the facts here, it is important to note that the Cuyahoga County prosecution was not for auto theft as petitioner implies, but was for robbery.[5] The elements of the crime of robbery are defined by the Ohio Revised Code in Sec. 2911.01 as follows: 'No person in . . . committing a theft offense . . . shall use or threaten the immediate use of force against another.' Receiving stolen property is defined as: 'No person shall receive, retain, or dispose of property of another, knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.' Ohio Rev. Code Sec. 2913.51.
 
 
 8
 It is apparent without further elaboration that the crime of robbery involving as it does the use or threatened use of immediate force involves an element clearly lacking from the elements of the crime of receiving stolen property. The Cuyahoga County prosecution clearly passes muster under the Blockburger test. United States v. Bennett, 702 F.2d 833 (6th Cir. 1983). Our inquiry does not end here, however, for petitioner has also raised the issue of collateral estoppel.
 
 
 9
 The Blockburger test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense. Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first.
 
 
 10
 Brown v. Ohio, 432 U.S. 161, 167-67 n.6 (1977).
 
 
 11
 It is clear that principles of collateral estoppel are embodied in the double jeopardy clause, thus making Blockburger a starting but not an ending point. Ashe v. Swenson, 397 U.S. 436, 445 (1970). It is equally clear, however, that the argument petitioner makes here to invoke the doctrine of collateral estoppel is not well founded.
 
 
 12
 In order to establish the receipt of stolen property offense, it would have been necessary for the prosecution to prove that Craig (1) received or retained, (2) the property of another, (3) knowing it to have been obtained through the commission of a theft offense. At trial, there was no doubt that the Plymouth was the 'property of another' since Craig made no claim of ownership. Also, there was no doubt that it was stolen property since the owner of the car testified to that fact. Also, Craig did not contest the fact of theft at trial but, of course, did not admit to being the thief. Thus, the only elements in issue were receipt or retention and knowledge. The prosecution failed to establish knowledge directly by showing Craig was the thief, since the owner could not identify Craig as the thief and the prosecution called no one else to make an identification.
 
 
 13
 The prosecution attempted to establish knowledge and receipt circumstantially, but the jury obviously found this attempt lacking. Craig testified at trial in his own behalf, and stated that the car had been driven to the department store parking lot by Buster Lee, and that Lee told him he owned the car. Thus, the issue of guilty knowledge and reception or retention went to the jury and they concluded there was a reasonable doubt on these issues.
 
 
 14
 Since a general verdict of acquittal does not indicate what element or elements the jury found lacking, we are left with the conclusion that the jury could have acquitted on the basis of Craig not being in 'receipt' (possession) of the car or that he had no knowledge that the car had been obtained by theft or both. This must be contrasted with the situation in which one is found guilty of the offense of receiving stolen property, in which case even a general verdict makes it clear that the jury found all elements proved, beyond a reasonable doubt.
 
 
 15
 Ashe, on which petitioner primarily relies, defines 'collateral estoppel' as follows:
 
 
 16
 It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law at least since this court's decision more than 50 years ago in United States v. Oppenheimer, 242 U.S. 85.
 
 
 17
 Ashe, 397 U.S. at 443.
 
 
 18
 Petitioner argues that under the doctrine of collateral estoppel, as set forth in Ashe, he could not be tried for a robbery charging him with stealing the Plymouth automobile, since a jury had already found he had no knowledge that that same Plymouth had been stolen. Obviously, so goes the argument, the robber would have knowledge of that which he stole.[6] Although this argument would be convincing if Craig had been tried for robbery and receipt of stolen goods in the same case and found guilty of either, in this fact situation it does not persuade because the premise on which it is founded is factually inaccurate. By taking the stand at the first trial and testifying that the Plymouth belonged to Lee and that Lee had driven it to where it was found, petitioner put in issue both the question of possession (receipt) as well as knowledge of theft. Thus, it is impossible to conclude that the general jury verdict of not guilty finally djudicated as an 'issue of ultimate fact' the issue of Craig's knowledge of the theft.
 
 
 19
 It should also be noted that the incorporation of the doctrine of collateral estoppel in the double jeopardy clause is at least partially predicated on the theory that an accused should not have to 'run the gantlet a second time.' Ashe, 397 U.S. at 446, quoting from Green v. United States, 355 U.S. 184, 190 (1957). Also, as Justice Brennan stated in concurring in Brown, '[t]he Double Jeopardy Clause . . . requires the prosecution in one proceeding . . . 'of all the charges . . . that grow out of a single criminal act, occurrence, episode, or transaction." Brown, 432 U.S. at 170, quoting Ashe v. Swenson, 397 U.S. at 453-454 and n.7.
 
 
 20
 Here we are not dealing with a single episode. The dress stealing incident was six weeks after the robbery and totally unrelated. What Craig did with the car after he escaped in it is anybody's guess. Indeed, Craig testified under oath that Lee was in possession of the car. This was not a case where prosecutors broke up a single criminal act into multiple prosecutions.
 
 
 21
 The district court correctly denied petitioner's request for habeas relief, and we AFFIRM.
 
 
 
 *
 Honorable Scott Reed, United States District Court, Eastern District of Kentucky, sitting by designation
 
 
 [1]
 Petitioner also raises a second issue on appeal--ineffective assistance of counsel. However, his ineffective assistance of counsel claim is predicated solely upon his counsel's failure to plead double jeopardy as a bar to his Cuyahoga County trial. Since this court concludes that petitioner's second trial did not offend the prohobition against being placed twice in jeopardy, it follows automatically that his counsel was not ineffective in failing to raise this issue
 
 
 [2]
 The grand theft charge involved the stolen dresses, and the other receipt of stolen property count involved a Llama .380 automatic pistol
 
 
 [3]
 The two separate county prosecutions are viewed as the act of a single sovereign under the Double Jeopardy Clause. Waller v. Florida, 397 U.S. 387 (1970)
 
 
 [4]
 At the close of the evidence at trial, the court reduced the aggravated robbery charge to robbery, so that actually the jury found Craig guilty of two counts of violating Ohio Rev. Code Sec. 2911.02, the general robbery statute. The original aggravated robbery charge was predicated upon the Pick-N-Pay incident in which, in the course of fleeing the store, Craig pushed the store manager through a plate glass window. The general robbery charge involved the theft of the Plymouth Valiant
 
 
 [5]
 Auto theft is a violation of Ohio Rev. Code Sec. 2913.02. Robbery is a violation of Ohio Rev. Code Sec. 2911.01
 
 
 [6]
 The Ohio statute, Ohio Rev. Code Sec. 2911.02, by incorporating theft offenses in the definition of robbery, actually make robbery a 'theft' committed by force or with the threatened use of force. Here, there is no question as to the 'force' element, since Craig forcefully took the Plymouth away from Lorrie Goldstein by pushing her out the door from behind the wheel of the car